COLE, Judge.
These cases concern three employees of the commissary at Louisiana State Peniten *471 tiary at Angola who were terminated from their positions due to allegations they had confessed to taking cigarettes from the commissary without paying for them.[1] The dismissals took place in May of 1979 and a lengthy procedural history followed. The employees appealed their dismissals, claiming they had taken only “complimentary” cigarettes from the commissary. A hearing was held before the Civil Service Referee in March of 1980 and an opinion was rendered by the Commission in March of 1981. The gist of the opinion was that the Commission did not find the employees’ testimony (that they took only “complimentary” cigarettes) to be credible and therefore the Commission upheld their dismissals.
The employees filed an appeal to this court and we noted in our decision, Wells v. Department of Corrections, Etc., 417 So.2d 377 (La.App. 1st Cir.1982), the opinion of the Commission did not reflect the Commission had in fact read the transcript of the proceedings and this omission implied the matter may have been decided solely by the referee. Under La. Const, art. X, § 12, the Civil Service Commission has the exclusive power and authority to “hear and decide” all removal and disciplinary cases. We cited Goudeau v. Department of Public Safety, 349 So.2d 887 (La.App. 1st Cir.1977), writ denied, 351 So.2d 165 (La.1977), wherein it was held the members of the Commission must read and examine the transcript as made before the referee and that the opinion must so indicate. Particularly, when the determination turns upon credibility of witnesses, the referee’s evaluation of the testimony must be made known to the Commissioners and reflected in the record. Therefore, the case was remanded to the Commission for proceedings consistent with those observations.
The Commission sought a rehearing, arguing this court had ignored a recent Civil Service rule change which no longer required the testimony to be transcribed in every case. See Rule 13.20(b) and (c). This court granted a rehearing, but ultimately reinstated the original opinion. (See Wells, supra.) We concluded the rule did not alter the Goudeau rationale or the constitutional requirement that the Commission “hear and decide” all cases. The fact that under the new rule the transcript could remain in oral form, had no effect whatsoever. The Commission sought writs to the Supreme Court, which were denied. See Wells v. Department of Corrections, Etc., 420 So.2d 983 (La.1982).
The Commission then reissued its opinion on February 11, 1983, wherein it acknowledged that the commissioners had read and discussed the entire record. Otherwise, the opinion was the same as the original one, i.e., the employees’ discharges were upheld. The employees then appealed.
The pivotal fact issue in this case is the meaning of appellants’ answers to a single question on a Psychological Stress Evalua-ter test (also referred to as a “voice stress” test). The three appellants were told to appear at the Louisiana State Police headquarters on May 9, 1979, to take the test. The test arose from an investigation of certain illegal activities at Angola. Appellants were accompanied by their attorney, Jessie Means, who was present with them while they each took the test. (Mr. Means was either present in the testing room or observed the testing through a one-way mirror from an adjacent room.) Prior to the test, the test administrator, Trooper Randall Barrow, explained each question to the appellants. He told them they would be asked if they had ever taken cigarettes from the commissary without paying for them. They were given ample opportunity to ask questions concerning the test. In the actual test, the above question was in fact asked. All three appellants answered “yes” to the question. Shortly thereafter appellants received letters informing them they were being terminated due to their confessed taking of cigarettes. The issue explored at the hearing was whether the appellants meant they had “stolen” cigarettes from the commissary, or whether they were stat *472 ing simply they had, in fact, literally “taken” cigarettes without paying for them, although those cigarettes were complimentary ones left for their consumption by the cigarette sales representative.
Certain facts were established at the hearing. First, it was proven that salespersons representing the various tobacco companies did leave complimentary cigarettes at the commissary to be smoked by the employees or any other interested person. Ms. Thompson testified she had been in charge of ordering cigarettes and the various sales representatives would come to the store approximately once a month. On many occasions they left her three complimentary packs of cigarettes for six purchased cartons. Dennis Dahmer of the Phillip Morris Tobacco Company testified it was company policy for the salesman to leave such samples. Don Kimball, a former administrative assistant at Angola, testified he had been the supervisor of the store manager for two years and was aware of the fact the cigarette salespersons left the complimentary cigarettes.
Second, it was established all three appellants received the complimentary cigarettes from time to time. Ms. Thompson, as the store employee in charge of the cigarettes, had access to whatever samples were left. She, on occasions, shared these samples with the other two appellants. Ms. Wells testified she had received the cigarettes twice during the year she worked at the snack bar and Ms. Foster said she had received them “not very often.”
Third, although not mentioned in the Commission’s opinion, it was proven all three appellants were advised by their attorney, Jessie Means, to answer the questions on the stress test “to the literal truth.” All three testified Mr. Means had advised them that if asked about taking cigarettes from the commissary, they were to answer yes, even though they knew the cigarettes were complimentary.
One factor brought out at the hearing was that this investigation began initially as a probe into allegations of drug-dealing between prisoners and employees at Angola. During the course of the investigation certain facts were uncovered concerning thefts of a large magnitude by prison employees. The matter concerning these three appellants was uncovered accidentally. Paul Phelps, Secretary of Corrections, and Sue Rouprich, an attorney for the Department of Corrections, both testified as to this. Further, Mr. Phelps testified he had met with the Fosters a few days after the voice stress test was administered. At this point it had been determined the three appellants were going to be terminated for their “confession” of stealing cigarettes. Phelps stated Ms. Foster’s husband had protested, alleging he and Ms. Foster knew of serious offenses committed by other employees. Mr. Phelps told them at that time if they cooperated with the Department and provided information concerning these other offenses, the official action of termination would be reconsidered and a lesser penalty imposed.
Copies of two letters addressed to Mr. Means, from Sue Rouprich, were introduced as exhibits. In one letter Ms. Foster was promised a lessened penalty of a three-day suspension in return for her cooperation and in the other Ms. Thompson was promised to be considered for re-employment in another position at the prison. Although there was no letter concerning Ms. Wells she testified she too had been offered a “deal,” as relayed to her by Mr. Means that if she provided information about other employees she would not lose her job. All three appellants testified they declined the offer because they knew nothing about the alleged criminal activities of other employees at Angola.
The Commission stated in its opinion it found simply the appellants testimony to lack credibility. The Commission concluded the appellants had ample opportunity to ask questions concerning the test and could easily have explained their situation regarding the complimentary cigarettes. The Commission therefore felt the defense of complimentary cigarettes was an “ex post facto rationalization.” The conclusion of the Commission was that the appellants had in *473 fact admitted to taking cigarettes from the commissary and these admissions included cigarettes other than complimentary ones.
Concerning the Commission’s conclusion about the “ex post facto rationalization,” the record contains conflicting testimony as to whether or not there was a discussion of the complimentary cigarettes prior to the time the test was given. Each appellant testified she did not raise the issue to Officer Barrow prior to the test, although she was given ample opportunity to do so. At one point Shirley Thompson elaborated by saying although she never mentioned the matter directly to Officer Barrow, she had discussed it with Mr. Means and another person while Officer Barrow was present in the room. Mr. Means testified he had talked about the matter with Officer Barrow, as will be discussed more fully below. Officer Barrow did not mention any conversation with Mr. Means and stated specifically that none of the appellants had said anything to him about complimentary cigarettes. He testified if they had done so, he would have rephrased the question so as to remove any ambiguity from it. Officer William Cox, also of the state police, testified he heard one of the appellants ask Officer Barrow about the complimentary cigarettes.
In light of the testimony of these persons, there was ample evidence the matter of the cigarettes was mentioned (although perhaps not to Officer Barrow) prior to the test being given. This satisfies us the Commission erred in concluding the complimentary cigarette matter was raised only as an after-the-fact excuse.
Concerning the Commission’s conclusion that the appellants would surely have spoken directly to Officer Barrow about the complimentary cigarettes, we find this is not necessarily the case under the circumstances. Although it may be tempting to so conclude, it must be noted these appellants undoubtedly experienced a great deal of apprehension caused merely by the fact they were called in from Angola to Baton Rouge for questioning about suspected thefts. At least one of the appellants had only an eighth grade education and would understandably be a bit intimidated by the accusation and by the procedure of taking the stress test.
Another factor which cannot be overlooked, and was well established at the hearing, is that all three appellants were informed (by Berl Cain, who was representing Mr. Phelps from the Department of Corrections) they would be fired if they refused to take the test or if they failed to answer each question truthfully. This certainly caused a great deal of anxiety. And finally, the most significant fact revealed at the hearing was that their own attorney advised them to answer each question “to the literal truth.” He even went so far as to advise them to answer affirmatively the specific question concerning the taking of cigarettes because he believed a negative answer would show up as a lie.
The attorney, Jessie Means, testified at the hearing concerning the advice he had given his three clients. He said he had asked Officer Barrow if the question was, “Have you taken cigarettes without paying for them” and his clients had taken complimentary cigarettes, and therefore answered no, if that answer would show stress. Officer Barrow had informed him it would possibly show stress. Concerning the specific question at hand, Means testified as follows:
“My clients, the three appellants here, had already told me as to the matter of the complimentary cigarettes. And, you know, I had already raised these objections about the cartons and them being picky and so forth. I said, ‘Well, if they find any sign that you’re lying on the test, they’re still going to fire you. So, you know, use your own judgment and my advice is for you to answer that question, “Have you taken cigarettes from the commissary without paying for them.” ’ — my advice to my clients was to answer yes to that question because Berl Cain had said, ‘If you are caught lying, you will be fired.’ And Trooper Barrow had told us that that question could possibly show a discrepancy if they answered *474 no under the circumstances. And that’s what happened.”
When the attorney was asked whether or not he had instructed the clients to answer the questions literally he said, “I told them, ‘Answer as to the literal' truth.’ That’s right.”
The Commission made no findings as relating to the testimony of the attorney. All witnesses are presumed to be telling the truth, therefore, since his testimony was uncontradicted on this subject, we have no reason to doubt his veracity. See La.R.S. 15:432.
Although the Commission apparently found no import in Mr. Means’ testimony, we find it to be of utmost importance and it is this testimony, more than any other, which precludes us from affirming the findings of the Commission. Since we find as a fact appellants were simply following the advice of their counsel in answering the question affirmatively, it would be completely unjust to penalize them for their (his) error in judgment. All three appellants testified unequivocally at the hearing they had never taken cigarettes other than complimentary ones and had answered the question “yes” strictly because their attorney had so advised them and also because they had been told they would be fired if they were found to have answered a question untruthfully. These factors, coupled with the fact that their attorney warned them they must answer to the “literal truth” or suffer a chance of having the test show stress, left the three appellants in a rather peculiar “Catch 22” position. They acted as instructed: they did not refuse to take the test, they answered the questions truthfully, and still they lost their jobs. Under these circumstances, we do not find it so incredible that they failed to explain their position concerning the complimentary cigarettes. They simply followed the advice of their counsel in what for them was obviously a very intimidating situation. Since the appellants knew Mr. Means was aware they were talking about complimentary cigarettes, yet he still instructed them to answer affirmatively, we can understand why they might have felt it unnecessary for them to clarify the situation any further.
At the hearing the referee questioned the attorney why he took no steps to remedy this confusing situation. Since Mr. Means knew his clients had taken complimentary cigarettes and he knew the question concerning the cigarettes had to be answered literally, the referee asked why he failed to act to have the question rephrased. Mr. Means answered, “It just wasn’t done.” He explained there was a great deal of animosity between him and Officer' Barrow and communications had “broken down.” He said because of his anger toward Officer Barrow at that time, “I wasn’t even talking with him.”
We note too there was not one shred of evidence brought forth at the hearing which corroborated the charges of stealing cigarettes. The sole basis of the termination was the answer to, what in these circumstances was, a rather ambiguous question on a voice stress test. The episode must be viewed in its entirety. This includes the intimidating circumstances of the stress test, the problems of answering the question “literally,” the unwavering advice of counsel to answer the question affirmatively, and the willingness of the Depart-ment to lessen the penalties in exchange for information. When so considered, it is clear the appointing authority has simply failed to prove by a preponderance of the evidence these employees in fact stole cigarettes from the commissary. See La. Const, art. X, § 8(A); Dept. of Culture, Recreation & Tourism v. Peak, 423 So.2d 718 (La.App. 1st Cir.1982).
Appellant Shirley Thompson filed a separate appeal wherein she prayed that should she be successful in her main appeal (of being reinstated to her position), she desired to be reinstated not as a cashier at the commissary but as an L.S.P. cadet, a position to which she had been transferred immediately prior to her termination. It was stipulated by counsel for the appointing authority at the hearing that should Ms. Thompson be successful in her appeal, she *475 would be reinstated to her position as an L.S.P. cadet.
For these reasons the decision of the Civil Service Commission is hereby reversed. Appellants Carolyn Wells, Frances Foster and Shirley Thompson are hereby reinstated to their former positions of Cook II, Cook I, and L.S.P. cadet, respectively, with back pay. All documents concerning the termination of these appellants are to be removed from their respective personnel files.
REVERSED.

. Ms. Wells and Ms. Foster were employed as Cook II and Cook I (respectively) at the snack bar adjacent to the prison store. Ms. Thompson was employed as a cashier at the store.